UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|                              |   |                      |
|------------------------------|---|----------------------|
| UNITED STATES OF AMERICA,    | * | CR 00-40069          |
|                              | * |                      |
| Plaintiff,                   | * |                      |
|                              | * |                      |
| -vs-                         | * | MEMORANDUM OPINION   |
|                              | * | AND ORDER            |
| ANDREW GOLTZ,                | * |                      |
|                              | * |                      |
| Defendant.                   | * |                      |
|                              | * |                      |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Andrew Goltz ("Goltz") filed a pro se motion for a sentence reduction/compassionate release pursuant to the First Step Act.[1] (Doc. 79.) The government opposes the motion. (Doc. 83.) For the following reasons the motion is denied.

## BACKGROUND

On January 2, 2002, Goltz pleaded guilty to the Superseding Indictment which charged him with wrecking trains:

> On or about the 26th day of August, 2000, at Brookings, in the District of South Dakota, defendant Andrew Goltz did willfully derail, disable and wreck a train, engine, motor unit and car used, operated and employed by the Dakota, Minnesota and Eastern Railroad, in interstate commerce, and did willfully undermine and otherwise make unworkable, unusable and hazardous, a track, signal, structure, property and appurtenance used in the operation of the Dakota, Minnesota and Eastern Railroad in interstate commerce with the intent to derail, disable and wreck a train, engine, motor unit and car used, operated and employed by the Dakota, Minnesota and Eastern Railroad, in interstate commerce, and which resulted in the death of Brad Davis, all in violation of 18 U.S.C. § 1992.

---

[1] The Second Circuit has described "compassionate release" as a "misnomer" because the statute "in fact speaks of sentence reductions." *United States v. Brooker*, --- F.3d ---, 2020 WL 5739712, at *8 (2d Cir. Sept. 25, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). "A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place." *Id.*

(Doc. 36.)  Goltz was sentenced to 300 months in prison followed by five years of supervised release.  (Doc. 60.)  Restitution was ordered as follows:  $1,595,000 to the Davis family, $323,000 to Dennis Baum, and $945,076 to DM&E Railroad. (Doc. 60.)  Goltz is currently incarcerated at the correctional institution in Herlong, California (FCI Herlong).  His projected release date is February 5, 2023, approximately twenty-eight months from now.  Goltz is 40 years old.  He will be 41 on October 11, 2020.

On July 31, 2020, Goltz filed a motion for compassionate release. (Doc. 79.)  Goltz states that he has had hepatitis C for ten years but he doesn't qualify for "the cure" in prison because his last test in 2018 did not reveal permanent liver damage.  He worries that he is at increased risk of developing severe illness from COVID-19 because he has hepatitis C.  Goltz requests that the Court grant him compassionate release for the remainder of his sentence so he can seek treatment for hepatitis C, and to support his parents.  He mentions financial and health difficulties his parents are facing.  His father has late stage multiple sclerosis and is non-ambulatory.  His mother had to retire from teaching because of her and her husband's health worries.  (Doc. 79.)

According to the BOP website, as of October 6, 2020, there were four inmates and two staff members at FCI Herlong who are positive for COVID-19. *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/. Three staff members and two inmates have recovered from COVID-19.  *Id.*

## DISCUSSION

Title 18, § 3582(c)(1)(A)(i), known as the "compassionate release provision" of the First Step Act, Pub. L. 115-391, 132 Stat. 5194, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant* . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[2]

---

[2]  18 U.S.C. § 3582(c)(1)(A)(ii) does not apply because Goltz, born in 1979, is 40 years old. Goltz would need to be at least 70 years old to qualify for compassionate release consideration under

18 U.S.C. § 3582(c)(1)(A) (emphasis added).  Prior to passage of the First Step Act, compassionate release requests came to the Court "upon motion of the Director of the Bureau of Prisons." *United States v. Rodd*, 966 F.3d 740, 745 (8th Cir. 2020).  Now, a defendant may bring his or her own motion with the Court if administrative remedies have been exhausted.  *Id.* at 744.

## I.  Administrative Exhaustion

A district court may grant a sentence reduction upon motion of the defendant only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). That requirement is satisfied here. On August 20, 2020, Goltz submitted a request to the warden at FCI Herlong, which was rejected on September 1, 2020.  (Doc. 84 at p. 3.)  As more than thirty days have elapsed from the date that Goltz submitted his request to the warden, the Court has jurisdiction to consider the motion.  *See United States v. Morehouse*, 2020 WL 2836188, at *2 (D.S.D. June 1, 2020) (Judge Karen E. Schreier) (motion for compassionate release is ripe for review where defendant submitted his request to the warden and the warden denied the request); *United States v. Harris*, 812 Fed. Appx. 106, 107, 2020 WL 4048690, at *1 (3rd Cir. July 20, 2020) (reversing district court's dismissal for failure to exhaust after government conceded that defendant was not required to completely exhaust the administrative remedy process after warden denied his compassionate release request).

## II.  Extraordinary and Compelling Reasons

To be eligible for compassionate release, a prisoner must show that "extraordinary and compelling reasons" warrant such a reduction in sentence and that the reduction is "consistent with applicable policy statements" issued by the United States Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A). Congress did not define what constitutes "extraordinary and compelling reasons." Congress elsewhere required the Commission to issue a policy statement "regarding . . . the appropriate use" of Section 3582(c), to include "describ[ing] what should be considered

---

Section (ii).

extraordinary and compelling reasons for sentence reduction, including the criteria to be applied." 28 U.S.C. § 994(a)(2)(C), (t).  Since the passage of the First Step Act, the Sentencing Commission has not yet updated its policy statements related to compassionate release, and the Sentencing Commission has not clarified what "extraordinary and compelling might mean," under the First Step Act.[3]  *United States v. Rodd*, 966 F.3d 740, 746 (8th Cir. 2020).  Thus, the Commission's Guidelines, formulated before the First Step Act was passed and well before the COVID-19 pandemic, still address motions for compassionate release being considered by the BOP Director.  Those Sentencing Guidelines provide that, "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)," the district court may reduce a defendant's term of imprisonment if, after consideration of the factors set forth in 18 U.S.C. 3553(a), the district court determines that –

> (1) (A) extraordinary and compelling reasons warrant the reduction; or

> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

As noted by the Eighth Circuit in *Rodd*, 966 F.3d at 746–47, the commentary to § 1B1.13 identifies four categories that constitute "[e]xtraordinary and compelling reasons warrant[ing] the [sentence] reduction," as that term appears in U.S.S.G. § 1B1.13(1)(A):

> (A) <u>Medical Condition of the Defendant</u>.
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis. of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include

---

[3]  In *Rodd*, the Eighth Circuit observed that since the Sentencing Commission lacks a quorum to amend the Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to compassionate release motions brought by defendants in the near future.  *Rodd*, 966 F.3d at 746 n.7 (citing *United States v. Beck*, 425 F.Supp.3d 573, 579 n.7 (M.D.N.C. 2019)).

metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
(ii) The defendant is—
(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from Which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.
(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, application note 1(A)-(D).

The Eighth Circuit has declined to address whether district courts are bound by the Sentencing Commission's examples in this policy statement when considering a prisoner's compassionate release motion under the First Step Act. In *Rodd*, the Eighth Circuit noted that "[w]hile some courts adhere to the pre-First Step Act policy statements, other courts have ruled that the pre-First Step Act policy statements are inapplicable, and that a judge has discretion to determine, at least until the Sentencing Commission acts, what qualifies as extraordinary and compelling reasons." *Rodd*, 966 F.3d at 745. The Court said it wasn't necessary to decide whether or not U.S.S.G. § 1B1.13 applies because the district court had assumed that Rodd's health and family concerns constituted extraordinary and compelling reasons making him eligible for

compassionate release under U.S.S.G. § 1B1.13, and still denied his motion after considering the § 3553(a) sentencing factors.  *Id.* at 747–48.

In *United States v. Brown*, 411 F.Supp.3d 446 (S.D. Iowa 2019), the district court judge, Judge Robert Pratt, explained how some district courts have concluded they should rely only on the Sentencing Commission's pre-First Step Act guidelines regarding compassionate release, while other district courts also look to the BOP Program Statement written for the old law, and will only grant a motion for compassionate release under the same circumstances as the BOP would have prior to the First Step Act.  *Id.* at 450.  Judge Pratt described why it is his opinion that Congress intended to increase the use of compassionate release, and by amending § 3582 to allow defendants to motion district courts directly for compassionate release even after the BOP denies their petition, Congress intended to give district judges more discretion "to consider the vast variety of circumstances that may constitute 'extraordinary and compelling.'" *Id.* at 451.

In this district, Judge Lange also has held that district courts are not limited by circumstances described in U.S.S.G. § 1B1.13, even if it applies to motions for compassionate release brought under the First Step Act.  *See United States v. Dillabaugh*, 2020 WL 3402392, at *3 (D.S.D. June 19, 2020) (holding that the "discretion given to the Director of the BOP in § 1B1.13 comment note 1(D), also allows federal judges to consider 'extraordinary and compelling reason[s] other than' those specifically described").

The Second Circuit is the only circuit that has addressed the issue.  That court recently ruled that compassionate release motions brought by prisoners pursuant to the First Step Act are not limited by the guidance in U.S.S.G. § 1B1.13.  *United States v. Brooker*, --- F.3d ---, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020).  After stating all of the reasons for its conclusion, including the history and text of the First Step Act and Guideline  § 1B1.13, the Second Circuit stated:

> For all of these reasons, the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.

*Brooker*, 2020 WL 5739712, at *7.

6

This Court agrees with the reasoning of Judge Pratt, Judge Lange and the Second Circuit, and holds that a district court may use its discretion when it is considering the "extraordinary and compelling reasons" for a compassionate release. With the understanding that it is not limited by Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance. *See Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release).

## 1. Serious Medical Conditions

The following medical conditions may constitute extraordinary and compelling reasons justifying compassionate release:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)[.]
> (ii) The defendant is—
>   (I) suffering from a serious physical or medical condition,
>   (II) suffering from a serious functional or cognitive impairment, or
>   (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, application note 1(A).

To the extent that Goltz is arguing his hepatitis C diagnosis is a serious medical condition that constitutes an extraordinary and compelling reason justifying compassionate release, that claim fails. First, he does not have a terminal illness as defined in section (i) above. Second, he has made no showing that his hepatitis C is a debilitating physical condition that substantially diminishes his ability "to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" as set forth in section (ii).

In addition, Goltz is relatively young and, though his hepatitis C is documented in the medical records, it appears to be asymptomatic. Goltz has not alleged that he has suffered any liver damage or other long-term medical issues associated with or resulting from his hepatitis C. Though Goltz's desire to undertake treatment to cure the hepatitis C is understandable, there is no showing

7

that such treatment will be unavailable if and when it becomes necessary.  The medical records show that the BOP consistently monitors Goltz's hepatitis C, and his health in general, and there is no indication of health or medical conditions that would place him at a higher risk from COVID-19.

**2. Advanced Age**

Compassionate release may be warranted where the defendant "(i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." § 1B1.13, application note 1(B).  Goltz is 40 years old and this category does not apply to him.

**3. Family Circumstances**

Goltz mentions his parents' financial issues and his father's advanced multiple sclerosis as reasons for compassionate release. (Doc. 79.)  The only family circumstances that warrant early release under the Sentencing Guidelines are "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, Application Note 1(C). Goltz does not indicate that he has minor children or an incapacitated spouse or partner, so this section does not apply.

Assuming that a need to care for a parent may be grounds for compassionate release, Goltz has not claimed that his mother needs care or that he is the only potential caregiver for his disabled father.  Though he says that his parents had to sell their house, his parents' letter indicates that they have a comfortable home with a spare bedroom, located less than a mile away from their daughter and her family.  (Doc. 82 at p. 2.)  There is no showing that Goltz's assistance is necessary.

**4. Other Reasons**

Compassionate release may be appropriate where "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13, application note 1(D). This final provision is often called the "catch-all" provision.  In its present version, subdivision (D) leaves identification of "other" extraordinary and compelling reasons to the BOP Director. *See id*.  But now that the First Step Act allows inmates to move the Court for compassionate release without the BOP's support, it is unclear what other reasons can be the basis for compassionate release. Judge Schreier recently

noted that "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Morehouse*, 2020 WL 2836188, at *2 (D.S.D. June 1, 2020.)  In *Morehouse*, Judge Schreier considered the defendant's argument that his circumstances warranted relief under this "catch-all" provision in application note 1(D) because "his medical conditions put him at high-risk if he contracts COVID-19." *Id.*  Finding that the defendant's medical conditions were being controlled and that the BOP's response to the pandemic at the Yankton FPC was adequate,[4] Judge Schreier held that the defendant's circumstances did not warrant a sentence reduction under U.S.S.G. § 1B1.13, application note 1(D).  *Id.* at *3-4.  *See also United States v. Roach*, No. 5:97-CR-50041-KES, 2020 WL 4347273, at *5 (D.S.D. Sept. 10, 2020) (finding defendant with hypertension and slight obesity (BMI between 30.8 and 31.3) during COVID-19 pandemic did not establish extraordinary and compelling reasons).

Judge Lange has also considered whether health issues, combined with the COVID-19 pandemic generally, constitute extraordinary and compelling reasons for compassionate release under the "catch-all" phrase in U.S.S.G. § 1B1.13, application note 1(D).  He observed:

> There can be no doubt that the effects of the global COVID-19 pandemic are extraordinary, and that the disease in some situations may be an "other reason" to grant compassionate release under § 1B1.13 comment note (D). The illness and the potential for its spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy.  Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." The question becomes whether [defendant's] medical conditions . . . combined with the crowded conditions of confinement justify compassionate release.

*United States v. Frost*, 2020 WL 3869294, at *4 (D.S.D. July 9, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).  Adopting this reasoning, this Court concludes that it has discretion to consider whether Goltz's health condition and being imprisoned during the COVID-19

---

[4]  When Judge Schreier issued her opinion, there had been no positive COVID-19 cases at the Yankton FPC. *Morehouse*, 2020 WL 2836188, at *2.

pandemic presents an extraordinary and compelling basis for a sentence reduction. *See also Brooker*, 2020 WL 5739712, at *9 (noting that district courts around the country have used the coronavirus pandemic "as a justification for granting some sentence reduction motions").

The medical records submitted in this case show that Goltz suffers from hepatitis C, but there is no indication of symptoms or liver damage. Regarding hepatitis C, the Centers for Disease Control and Prevention (CDC) states:

> Currently, we have no information about whether people with hepatitis B or hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19. However, based on available information and clinical expertise, older adults and people of any age who have serious underlying medical conditions, including people with liver disease, might be at higher risk for severe illness from COVID-19, particularly if the underlying medical conditions are not well controlled.

Coronavirus Disease 2019 (COVID-19): What to Know About Liver Disease and COVID-19, Centers for Disease Control and Prevention (last reviewed September 30, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html.

According to the CDC, people with the following health conditions are at "increased risk for severe illness from COVID-19": cancer, chronic kidney disease, COPD, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), serious heart conditions, sickle cell disease, and Type 2 diabetes. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last reviewed September 30, 2020). The CDC also provided a list of medical conditions that "might" put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), cerebrovascular disease, cystic fibrosis, hypertension or high blood pressure, immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids or other immune weakening medicines, neurologic conditions, such as dementia, liver disease, pregnancy, pulmonary fibrosis, smoking, Thalassemia (a type of blood disorder), and Type 1 diabetes. *Id.* The CDC has also stated that the risk for severe illness increases with age. *Older Adults*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (September 30, 2020). "In fact, 8 out of 10 COVID-19-related deaths reported in the United States have been

10

among adults aged 65 years and older." *Id.* "The greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Id.*

As stated earlier, the medical records submitted show that Goltz's hepatitis C is under control. There is no mention of symptoms or liver damage. In addition, Goltz has not shown that the BOP's response to the pandemic at FCI Herlong has been inadequate. As of September 23 there were only six active case of COVID-19, and two inmates and three staff members have recovered. The fact that Goltz has hepatitis C during the pandemic does not mean that extraordinary and compelling reasons justify a sentence reduction. *See United States v. Hilliard*, 2020 WL 3182778 (S.D.N.Y. June 15, 2020) (denying motion to release by a defendant who was forty years old with asymptomatic hepatitis C but no other high-risk ailments).

To the extent Goltz argues that the combination of his hepatitis C and his family concerns constitute extraordinary and compelling reasons warranting a sentence reduction, that argument is rejected. The Court recognizes the seriousness of the hepatitis C virus and the difficulties Goltz's parents face due to his father's advanced multiple sclerosis and the COVID-19 pandemic, but those "circumstances do not clear the high bar necessary to warrant a sentence reduction under USSG § 1B1.13 comment note 1(D)." *Morehouse*, 2020 WL 2836188, at *3.

For these reasons the Court concludes that Goltz has not met his burden to show extraordinary and compelling reasons warranting his release.

## III. Section 3553(a) Factors

Even if the Court found that extraordinary and compelling reasons existed, it would deny Goltz's motion because, considering all of the section 3553(a) factors, the Court concludes that a sentence of 300 months remains appropriate. Under section 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," considering:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence[s] and the sentencing range established for–

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . .;]

(5) any pertinent policy statement guidelines [issued by the Sentencing Commission . . .;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At Goltz's change of plea hearing on April 23, 2001, the Court believed the statutory minimum penalty for his violation of 18 U.S.C. § 1992 was life imprisonment because a death resulted.[5] Defense counsel argued that the Court could impose a sentence of less than life imprisonment and requested an opportunity to brief the issue. After briefing by the parties and further consideration, the Court determined that it could impose a sentence of less than life imprisonment due to an ambiguity in the language of the statute.  (Doc. 54.)  In its Memorandum Opinion and Order on the issue, the Court described the background as follows:

---

[5]  Generally speaking, the term of imprisonment for a violation of § 1992 is limited to "not more than twenty years." 18 U.S.C. § 1992(a).  If the violation results in the death of any person, however, the violator "shall be subject also to the death penalty or to imprisonment for life." 18 U.S.C. § 1992(b) (2000).  The government gave notice of its intention not to seek the death penalty. (Doc. 32.)

The defendant, Andrew Goltz, admitted to investigators that, on or about August 26, 2000, he tampered with a switch on railroad tracks used by the Dakota, Minnesota and Eastern Railroad in Brookings, South Dakota. According to his statements to law enforcement, the defendant used a hammer to break a lock on the switch, turned the switch, and then used plastic bags and a pizza box to cover up a reflector that would have alerted the operators of an oncoming train to the fact that the switch had been turned. When a westbound train came along during the early morning hours of August 26, it was diverted onto a sidetrack where it collided with eight stationary rail cars. The train's conductor, Brad Davis, was killed in the collision, and its engineer, Dennis Baum, was seriously injured.

In his statements to investigators on August 29, Goltz described why he turned the switch:

> Well, I thought, I thought the train was just going to detour and it was going to shake up the drivers. I really didn't intend to hurt anybody or wreck any of the equipment or anything.

Goltz stated that "it was supposed to be, like, a prank." There is apparently some evidence that Goltz knew the eight cars were parked on the sidetrack.

(Doc. 54 at pp. 1-2.)

At Goltz's sentencing hearing on May 20, 2002, the Court described the offense as "serious in the extreme." (Doc. 61, Sentencing Transcript at p. 64.) In denying Goltz's request for a downward departure, the Court stated, in part: "when I look at the underlying offense conduct, the nature of it, degree of risk inherent in the conduct, which is very high, and the high degree of recklessness, the request for downward departure is denied." (Doc. 61 at pp. 64-65.) The Court calculated a Sentencing Guidelines range of 292 to 365 months' imprisonment. It concluded that a sentence of 300 months' imprisonment was appropriate for an offense "as serious" as Goltz's. (Doc. 61 at p. 70.)

The Court has again carefully reviewed the sentencing factors in 18 U.S.C. § 3553(a) and finds that a sentence of 300 months is still sufficient and not greater than necessary to comply with the purposes of § 3553.[6] Prior to sentencing, Goltz was provisionally diagnosed with bipolar

---

[6] While in prison Goltz has completed numerous educational programs available through the BOP, especially during the last five years. (Doc. 81, pp. 46-47.) In a recent letter, his parents described how Goltz helped other inmates obtain their GED while he was incarcerated in Texas. (Doc. 82 at p. 2.) While Goltz's efforts are laudable, they do not outweigh the seriousness of his offense. In

disorder.  That disorder does not explain the lack of remorse by Goltz, a lack of remorse which did not promptly diminish, although ultimately remorse was expressed.  This sentence reflects the seriousness of the offense, deters future crimes by Goltz, provides just punishment, and protects the public from further crimes by Goltz.

**CONCLUSION**

The Court finds that extraordinary and compelling circumstances do not exist, and that a sentence reduction would not be consistent with the section 3553(a) factors, or with the policy statement in U.S.S.G. § 1B1.13 to the extent it is applicable.  Accordingly,

**IT IS ORDERED** that defendant Andrew Goltz's Motion for Compassionate Release is denied. (Doc. 79.)

Dated this 6th day of October, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

---

addition, the records submitted in this case document several incidents of drug use and fighting by Goltz in prison.  (Doc. 81, pp. 40-45,  56-82.)

14